1

2

3

4                    UNITED STATES DISTRICT COURT

5                         DISTRICT OF NEVADA

6                                * * *

7    DAVID LAVELLE,                        Case No. 2:19-CV-1251 JCM (DJA)

8                     Plaintiff(s),                      ORDER

9         v.

10   CITY OF LAS VEGAS, NEVADA, et al.,

11                     Defendant(s).

12

13          Presently before the court is plaintiff David LaVelle's motion for summary judgment

14   (ECF No. 59).  Defendant Las Vegas Metropolitan Police Department ("LVMPD") responded

15   (ECF No. 66), to which LaVelle replied (ECF No. 70).

16          Also before the court is LVMPD's motion for summary judgment (ECF No. 60).

17   LaVelle responded (ECF No. 64), to which LVMPD replied (ECF No. 69).

18   **I.      BACKGROUND**

19          The instant action arises from an interaction between LaVelle and LVMPD officers while

20   LaVelle was preaching in the Fremont Street Experience[1] ("FSE").  LaVelle is an evangelical

21   Christian who preaches in public areas using a personal voice amplifier.  (ECF No. 59 at 2).  He

22   shares his faith in public places where he can find a significant flow of pedestrian traffic, like

23   FSE. (*Id.*).  He does not solicit or seek money when he preaches.  (*See id.*).

24

25

26   _____

27          [1] FSE consists of a five block stretch of Fremont Street which is closed to automotive
     traffic and serves as a commercial and entertainment complex.  A private company, the Fremont
28   Street Experience LLC, ("FSELLC") is responsible for acquiring, constructing, improving,
     operating, managing, and maintaining FSE.  For an in-depth discussion of FSE's creation, *see
     ACLU v. Las Vegas*, 333 F.3d 1092, 1094–96 (9th Cir. 2003).

James C. Mahan
U.S. District Judge

1    Pursuant to Las Vegas Municipal Code ("LVMC") § 9.16.050, any person who violates

2    the provisions of LVMC chapter 9.16 is guilty of a misdemeanor.  Las Vegas Mun. Code of

3    Ordinances § 9.16.050.   LVMC § 9.16.010 provides: "[s]ubject to the provisions of this

4    [c]hapter, no person shall make, cause, create or continue any noise disturbance within the

5    corporate boundaries of the [c]ity."  Las Vegas Mun. Code of Ordinances § 9.16.010.  Further,

6    LVMC § 9.16.030(K) provides:

7    The use or operation for any purpose of a loudspeaker, public address system, or
     sound amplification device in connection with any radio, phonograph, tape
8    recorder, microphone or similar device:
         1.  In such a manner or at such a volume that it is plainly audible to the
9            human ear at a distance of fifty feet or more from the source of the
             sound . . . .

10   Las Vegas Mun. Code of Ordinances § 9.16.030(K) (the "Noise Ordinance").  However,

11   LVMC § 9.16.010 states "[n]oncommercial public speaking and public assembly activities that

12   are conducted on any public right-of-way or in any public space shall be exempt from the

13   operation of this [c]hapter."  Las Vegas Mun. Code of Ordinances § 9.16.010.

14   In late July, 2018, Mark Reddon, head of FSE Mall security, emailed, among others, Ed

15   Poleski, the city attorney, and Lazaro Chavez, then a captain and bureau commander of the

16   downtown area (*See* ECF No. 59-1 at 141).  (*Id.* at 177–78).  There, Reddon asked the recipients

17   if there was "any legal recourse we can use to change [the] behavior" of religious preachers in

18   the FSE.  (*Id.* at 178).  Specifically, Reddon complained about the use of amplified noise in the

19   FSE Mall.  (*Id.*).  In response, Poleski cited the Noise Ordinance and instructed Reddon that "[i]f

20   the sound can be heard [fifty] feet away, it's a violation of this ordinance."  (*Id.* at 177).

21   Reddon proceeded to forward Poleski's response to Chavez, who claimed in his

22   deposition that he did not know how to enforce the Noise Ordinance until he received that email.

23   (*Id.* at 150–51).  In his forwarded email, Reddon claimed that "[w]e seem to continue to have

24   issues with our street preachers. . . . I have discussed the enforcement opportunities with the city

25   attorney criminal division and he would prosecute any citations written under [the Noise

26   Ordinance]."  (*Id.* at 176).  On September 6, 2018, Chavez, who at the time oversaw all officers

27   in the downtown area, forwarded that email to his lieutenants, Bechler and Butler, instructing

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  them to "brief the bike squad on this." (*Id.*). Bechler then forwarded this email to sergeant

2  Gibson, who directly supervised officer Robert Brown, stating only, "fyi." (*Id.*).

3        Later that year, on December 29, 2018, several of LaVelle's friends took turns preaching

4  with a voice amplifier in FSE. (*Id.* at 7). Minutes after LaVelle began preaching, a group of

5  police officers arrived. (*Id.* at 8–9). LVMPD officer Acosta approached LaVelle and escorted

6  him to the other officers. (*Id.* at 9). Sergeant Gibson then approached and told Brown to cite

7  LaVelle for violating the Noise Ordinance. (*Id.*).

8        Acosta, now accompanied by Brown, escorted LaVelle to a police cruiser and collected

9  LaVelle's information. (*Id.* at 10). Acosta then left LaVelle with Brown for about thirty

10  minutes, during which time Brown cited LaVelle for violating the Noise Ordinance. (*Id.*).

11  LaVelle then returned to his friends, explained what happened, and left soon after. (*Id.*).

12        Two months later, on February 8, 2019, LaVelle sent a letter to the sheriff of Clark

13  County, Joseph M. Lombardo, demanding that the sheriff assure LaVelle that LVMPD would no

14  longer enforce the Noise Ordinance. (ECF No. 59-2 at 24–27). Sheriff Lombardo, through

15  LVMPD general counsel, declined to do so. (*Id.* at 29). Thereafter, LaVelle initiated this action.

16        After years of litigation, the only claim remaining is LaVelle's claim against LVMPD for

17  violation of his First Amendment rights. Both parties now move for summary judgment on that

18  claim. (ECF Nos. 59, 60).

19  **II.    LEGAL STANDARD**

20        Summary judgment is proper when the record shows that "there is no genuine dispute as

21  to any material fact and the movant is entitled to a judgment as a matter of law." [2] Fed. R. Civ.

22  P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported

23  claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid

24  unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

25  1468, 1471 (9th Cir. 1994).

26

27      [2] The court can consider information in an inadmissible form at summary judgment if the
information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)
(citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary
28  judgment, a party does not necessarily have to produce evidence in a form that would be admissible at
trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**James C. Mahan**
**U.S. District Judge**

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).  In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  In other words, the opposing party must show that a judge or jury has to resolve the parties' differing versions of the truth.  *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial.  *Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.   **DISCUSSION**

James C. Mahan
U.S. District Judge

- 4 -

"[M]unicipalities and other local government units" are liable for employees' constitutional torts only if its employees acted tortiously pursuant to a municipal custom or policy. 436 U.S. at 690–91, 698. Furthermore, "a municipality cannot be held liable under [S]ection 1983 on a *respondeat superior* theory." *Id.* at 694.

Therefore, to prevail on summary judgment, LaVelle must prove that "(1) [he] was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to [his] constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (quoting *Van Ort v. Estate of Stanewhich*, 92 F.3d 831, 835 (9th Cir. 1996)).

### 1. There is no genuine question of material fact that Brown deprived LaVelle of his First Amendment rights

No party disputes that Brown improperly cited LaVelle under the Noise Ordinance for his non-commercial speech in disregard of the Noise Ordinance's non-commercial speech exception. As was discussed at length in the court's order granting in part and denying in part LVMPD's motion to dismiss (ECF No. 49), the Noise Ordinance is a facially valid law in part because of the non-commercial speech exception to its enforcement. (*Id.* at 14–17). Thus, there are no genuine questions of material fact as to whether there was a deprivation of constitutional rights.

Accordingly, the court holds that Brown citing LaVelle under the Noise Ordinance for non-commercial speech deprived LaVelle of his First Amendment rights.

### 2. The trier of fact could not reasonably determine a policy existed

For liability to attach to LVMPD, a municipality, LaVelle must establish that the constitutional violation was somehow caused by LVMPD. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 at 691–95 (1978). A plaintiff can establish a municipal policy by demonstrating one of the following: (1) an express municipal policy; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with force of law,'"; or (3) the decision of a person with final policy making authority." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)).

James C. Mahan
U.S. District Judge

- 5 -

1    Additionally, the Ninth Circuit has articulated that liability may attach to a municipality

2    under Section 1983 by ratification.  *See Clouthier v. Cty. Of Contra Costa*, 591 F.3d 1232, 1249–

3    50 (9th Cir. 2010).  Ratification can be established when an authorized policymaker approves of

4    a subordinate's unconstitutional action.  *Id.*

5            A.  <u>Enforcing the noise ordinance against non-commercial speech is not</u>
                 <u>LVMPD's express municipal policy</u>

6        LaVelle contends that the express policy of unconstitutional enforcement is proven

7    because LVMPD's criminal offense handbook (the "handbook") includes the Noise Ordinance

8    and its elements without the non-commercial exception listed thereafter.  (ECF No. 59 at 14).

9    LaVelle also contends that the "written guidance supplied to LVMPD officers" reflects

10   LVMPD's express policy.  (*Id.*).  LaVelle is mistaken.

11                    *i.      The handbook is not an express policy*

12       Having reviewed LaVelle's provided portion of the handbook (ECF No. 59-1 at 26–27),

13   the court holds that no reasonable juror could determine the handbook constitutes an express

14   LVMPD policy.  The handbook contains a list of common disturbances, the relevant statutes and

15   booking codes for such disturbances, examples of text the officers may include in their citations

16   for those disturbances, and some notes for the officers to remind them of tips and requirements

17   for certain disturbances.  (*Id.*).  The handbook does not provide exhaustive requirements to issue

18   citations, nor does it contain the exceptions to any listed disturbance.  Yet, the trier of fact could

19   not reasonably determine that the handbook's lack of exceptions constitutes a blanket LVMPD

20   policy to enforce all laws regardless of any exceptions.

21       Thus, the absence of exceptions in the handbook does not amount to an official LVMPD

22   policy that officers must enforce the Noise Ordinance regardless of the non-commercial speech

23   exception.[3]

24                    *ii.     The written guidance is not an express policy*

25

26

27   _____

28      [3] The court makes this determination despite the non-controlling authority LaVelle cites.
     The court is not required to rely on non-controlling authority, and LaVelle does not cite any
     controlling authority refuting this determination.

James C. Mahan
U.S. District Judge                                        - 6 -

The written guidance is reflected in the record by the chain of emails forwarded to Brown's superior officers.  (ECF No. 59-1 at 176–178).  As previously discussed, the email chain provides that FSE's head of security complained about preachers who used amplification devices in the FSE mall; that the City attorney instructed FSE's head of security that the Noise Ordinance exists and is enforceable; and that LVMPD's downtown bureau commander instructed his lieutenants to brief their squads and look out for amplified preaching.  (Id.).  Yet, the emails contain no change in law, no codification into police training, nor anything that a trier of fact could use to reasonably determine this email chain constitutes an express policy.

Accordingly, there are no genuine questions of material fact regarding whether the written guidance constituted an express policy.  The court holds it was not.

Therefore, there is no genuine question of material fact regarding whether there was an express policy to enforce the Noise Ordinance against non-commercial religious preachers.  The court holds that there was no such policy or custom.

### B. There is no permanent and well settled widespread practice to constitute a custom or usage with force of law

Having reviewed the record, including the depositions with officers Robert and Gibson, it is clear that the enforcement of the noise ordinance was a new point of focus for LVMPD—not a long-standing custom.  LaVelle cannot, after lengthy discovery, cite a single instance of another individual being cited under the Noise Ordinance for similar non-commercial conduct, nor can any deposed officer recall citing individuals other than LaVelle for violating the Noise Ordinance.  (See, e.g., ECF No. 59-1 at 34, 101, 150).[4]  At most, the record reflects that some officers issued warnings for using amplified noises.  (Id. at 34, 119–20).

As to the handbook, LaVelle cannot establish that there is a custom of using the handbook to unconstitutionally cite preachers under the Noise Ordinance for non-commercial speech.  Even assuming, arguendo, that it is well settled for the officers to exclusively rely on the

---

[4] LaVelle contends that "LVMPD police officers had applied the restrictions of the Noise Ordinance to amplified non[-]commercial speech in the FSE Mall on multiple occasions prior to citing LaVelle in December of 2018."  (ECF No. 59 at 16).  However, LaVelle provides no citation to support that officers cited other individuals, and the court cannot find any such support in the record.

1  handbook, there is no question of material fact that Brown did not.  According to the record,

2  Brown relied on many sources of information, including a copy of the law that he personally

3  printed and carried.  (*See id.* at 54).  In fact, Brown confirmed in his deposition that he did not

4  rely on the handbook because he knew it did not contain all the information he may have needed.

5  (*Id.* ("[A] lot of the paper that I have has more in-depth information on it than what is pertained

6  in the [handbook].")).

7      As to the "written guidance supplied to LVMPD officers," the record clearly establishes

8  that the first time the any officer contemplated the guidance was July, 2018, around the time the

9  email chain was sent.  (*See e.g.*, *id.* at 77–78, 98–99, 151, 177–78).  Thus, LaVelle cannot

10  establish that the five-month-old written guidance was so "permanent and well settled" to

11  constitute a custom or usage.

12      Accordingly, there is no genuine question of material fact regarding whether there was a

13  permanent and well settled custom to cite preachers for their non-commercial speech.  The court

14  holds there was not.

15          C.  <u>No official with final policy making authority ratified the deprivation of constitutional rights</u>

16      When a deprivation of constitutional rights occurs in a single incident, as it did here,

17  municipal liability attaches where the policymaker possesses the final authority to establish

18  municipal policy for the complained of action.  *Pembaur v. City of Cincinnati*, 475 U.S. 469,

19  480–81 (1986).  Municipal liability may attach by ratification of the final policymaker.

20  *Clouthier*, 591 F.3d at 1249–50.  "[R]atification requires, among other things, knowledge of the

21  alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

22      LaVelle and LVMPD concede that the person with final policy making authority in the

23  LVMPD is the sheriff.  (ECF Nos. 59 at 18; 60 at 11).  At all times relevant to the instant action,

24  the sheriff of Clark County was sheriff Lombardo.

25      On February 8, 2019, LaVelle, through counsel, sent a letter to sheriff Lombardo

26  outlining this matter and demanding that the sheriff issue "assurance that Las Vegas will cease

27  subjecting [LaVelle] to the [fifty]-foot rule of [the Noise Ordinance], and that [LaVelle] will be

28  allowed to use his reasonable amplification on public ways in Las Vegas in the future."  (ECF

**James C. Mahan**
**U.S. District Judge**

- 8 -

No. 59-2 at 24–27).  The sheriff, through LVMPD's general counsel Liesl Freedman, responded to LaVelle that "[LVMPD] has a statutory duty to enforce the law of the State of Nevada and maintain public order and safety."  (ECF No. 59-2 at 29).

LaVelle contends that Freedman's response amounts to sheriff Lombardo's ratification of Brown's conduct.  (ECF No. 59-1 at 18); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (holding that the jury did not plainly err in finding that a police chief ratified his officers' use of excessive force by signing a letter stating that the plaintiff's police complaints could not be sustained).  LaVelle is mistaken.

In *Larez*, the trier of fact heard expert testimony that another reasonable chief of police would have disciplined the individual officers involved and established new procedures to avoid future recurrences.  *See Larez*, 946 F.2d at 646.

Here, no such expert testimony has been provided or even alluded to.  There is nothing in the record showing that another reasonable sheriff would have reprimanded Brown or instituted new procedures to avoid future occurrences of improper citations.  Even if there was such evidence, the record also shows that the officers have already stopped enforcing the law in the way LaVelle complains of.  (*See* ECF No. 59-1 at 77, 128).

Additionally, LaVelle's argument is inconsistent with the record.  LaVelle contends that the sheriff could have assured LaVelle that LVMPD would not enforce the Noise Ordinance to his non-commercial preaching.  (ECF No. 59 at 19).  However, LaVelle's letter contains no mention of the Noise Ordinance's non-commercial speech exception.  (*See* ECF No. 59-2 at 24–27).  Instead, LaVelle's letter argues that the Noise Ordinance itself is facially unconstitutional.  (*Id.*).  Yet, as the court discussed at length in its order granting in part and denying in part LVMPD's motion to dismiss, the noise ordinance is a facially constitutional ordinance.  (ECF No. 49 at 16).

Based on LaVelle's letter, the sheriff did not, and could not have, ratified Brown's ignorance of the Noise Ordinance's non-commercial speech exception.  At most, the record shows that sheriff Lombardo refused to issue a blanket statement that his officers would no

James C. Mahan
U.S. District Judge

- 9 -

1  longer enforce a facially constitutional law.  Therefore, the trier of fact could not reasonably

2  determine that the sheriff specifically ratified Brown's conduct.

3     Accordingly, there remains no genuine question of material fact as to whether the sheriff

4  ratified the complained of conduct.  The court holds he did not.[5]

5     As there is no genuine question of material fact regarding whether there was a policy,

6  LaVelle cannot prove that the policy was deliberately indifferent to his constitutional rights nor

7  that the policy was the driving force behind the violations.  Thus, LaVelle cannot prove his

8  *Monell* claim.  As LaVelle cannot prove his *Monell* claim, there is no basis upon which to

9  determine his request for permanent injunction.  Therefore, the court GRANTS summary

10  judgment in favor of LVMPD.

11  **IV.    CONCLUSION**

12     Accordingly,

13     IT IS HEREBY ORDERED, ADJUDGED, and DECREED that LaVelle's motion for

14  summary judgment (ECF No. 59) be, and the same hereby is, DENIED.

15     IT IS FURTHER ORDERED that LVMPD's motion for summary judgment (ECF No.

16  60) be, and the same hereby is, GRANTED.  The clerk shall ENTER JUDGMENT and CLOSE

17  this case.

18     DATED September 23, 2021.

19  _____

20  UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27     [5] LaVelle also contends that LVMPD is judicially estopped from arguing that there was
no policy.  (ECF No. 51-1 at 20).  To the contrary, LVMPD's counsel provides arguments that
28  neither *explicitly* contradict its earlier arguments nor present a *clear* indication that the court was
misled in the first or in this case.  *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).
Thus, LVMPD is not judicially estopped from arguing there was no policy.